UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>DUSTIN SATO-SMITH,<br><br>　　　　　　　　　　　　Defendant. | Case No.: 3:24-cv-00668-JES-MSB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**[ECF No. 19]** |
|---|---|

　　　　Before the Court is Defendant U.S. Border Patrol Agent Dustin Sato-Smith's ("Agent Sato-Smith" or "Defendant") motion to dismiss the case based on Supremacy Clause immunity. ECF No. 19. The motion is opposed by Plaintiff, the People of the State of California ("Plaintiff"). Further, Plaintiff filed an opposition to petition for removal, which the Court interprets to be a motion to remand the case back to state court and an opposition to Defendant's motion to dismiss. ECF No. 17.

　　　　The Court held an evidentiary hearing on October 28, 2024. ECF No. 20. Based on the testimony presented at the hearing, the joint statement of uncontested facts, the

arguments of counsel and for the reasons set forth below, the Defendant's motion to Dismiss is **GRANTED**.

## I. BACKGROUND

### A. Procedural Background

On February 14, 2024, the San Diego County District Attorney's Office issued a misdemeanor criminal complaint charging one count of vehicular manslaughter-non-alcohol-non-gross-negligence. Defendant was arraigned on March 14, 2024, and subsequently filed a timely notice of removal to this Court on April 11, 2024, pursuant to 28 U.S.C. section 1442(a). As grounds for removal, Defendant asserted the federal defense of federal immunity.

### B. Factual Background

Agent Sato-Smith, was a federal law enforcement officer, assigned as a Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection ("CBP"). Agent Sato-Smith was assigned to the CBP Campo Station located at 32355 Old Highway 80, Pine Valley, CA 91962. On February 19, 2023, at approximately 8:04 p.m., Agent Sato-Smith was on duty as a CBP Officer, driving a 2012 Chevy Express Van owned by the United States Border Patrol, westbound on State Route 94, west of Volmer Lane when he received a call for service from Border Patrol dispatch. The location of the call was in the opposite direction of Agent Sato-Smith's direction of travel. The call was relating to a group of individuals staging south of the International Border fence separating the United States and the Republic of Mexico. Staging refers to individuals who are gathering near the fence and attempting to enter the United States illegally, by either climbing over or going through a broken or damaged section of the border fence. After receiving the call about the group staging, Agent Sato-Smith then learned over dispatch that grounds sensors on the United States side of the border near where the group was staging had been activated.

Agent Sato-Smith did not hear that anyone else was responding to the location and knowing that it was a holiday weekend, and his station was operating with a skeleton crew,

decided to respond to the location. Agent Sato-Smith slowed down his vehicle and began a u-turn to travel east on State Route 94. Before he could complete the u-turn, a motorcycle driven by Ellis Woodall collided with the driver's side door of the Chevy Express van. Mr. Woodall died as a result of his injuries. Mr. Woodall was riding his motorcycle west on State Route 94, behind Agent Sato-Smith at an unknown speed.

Agent Sato-Smith did not activate his emergency lights prior to responding to the call for service. Agent Sato-Smith could not remember if he activated his left turn signal prior to making the u-turn. The speed of Mr. Woodall's motorcycle prior to the collision could not be determined. When Mr. Woodall crossed over the broken yellow line for the purpose of passing Agent Sato-Smith could not be determined. Whether Mr. Woodall's headlamp was illuminated prior to the collision could not be determined, because the headlamp was damaged in the collision, but the motorcycle was equipped with a two-position, high(HI) and low(LO) beam dimmer switch and the switch was in the LO position after the collision. During the medical examination, Mr. Woodall had 3500 ng/mL of methamphetamine, and 140 ng/mL of amphetamine in his system, but no alcohol. Mr. Woodall was not licensed to operate a motorcycle at the time of the collision.

State Route 94 near the collision is a two-lane highway, one lane in each direction, westbound and eastbound. The lanes are separate with broken yellow center lines with an embedded rumble strip and raised yellow pavement markers. There were not streetlights on the stretch of State Route 94 where this collision occurred. Further, State Route 94 near where this incident occurred is approximately 100 yards away from the International Border fence. The area is known as an area where human smuggling and drug smuggling occurs regularly. The area is very remote and isolated and has brush near the highway that allows individuals to conceal themselves while waiting for vehicles to pick them up and move them into the interior of the United States. Individuals who illegally enter the United States sometimes possess firearms and/or controlled substances.

///

///

## II.    LEGAL STANDARD

Supremacy Clause immunity protects federal officers from state court prosecution when the prosecution is based on activities performed in the scope and course of duty where the officers conduct was "necessary and proper." *In re Neagle*, 135 U.S. 1 (1890). When a federal officer seeks to use Supremacy Clause immunity, he must first establish a threshold defense of immunity. *Commonwealth of Kentucky v. Long*, 837 F.2d 727, 857 (6th Cir. 1988). Then the burden shifts to the prosecution to produce evidence "sufficient at least to raise a genuine factual issue whether the federal officer was … doing no more than what was necessary and proper for him to do in the performance of his duties." *Id*. "The district court should grant the motion in the absence of an affirmative showing by the state that the facts supporting the immunity claim are in dispute." *City of Jackson v. Jackson*, 235 F.Supp.2d 532, 534 (S.D. Miss. 2002).

Federal agents are protected from state criminal prosecution where the federal agent is acting reasonably within the broad contours of official duty, and without malice. *Idaho v. Horiuchi*, 253 F.3d 359, 381 (9th Cir.) (en banc) (Hawkins, dissenting), vacated as moot, 266 F.3d 979 (9th Cir. 2001). To determine this the court first must look to whether the federal agent's act was done pursuant to the law of the United States and in the line of duty. *Clifton v. Cox*, 549 F.2d 722, 726 (9th Cir. 1977). For a federal employee to be stripped of Supremacy Clause immunity it must be shown that the employee employed means which he cannot honestly consider reasonable in discharging his duties or that the act was made out of malice or with criminal intent. *Id*. at 728.

To establish a federal immunity defense growing out of an on-duty vehicular traffic accident, "a federal officer must show that the accident resulted from an exigency or emergency related to his federal duties which dictated or constrained the way in which he was required to, or could, carry out those duties. Thus, the necessity to exceed a speed limit in order to capture a fleeing felon … [is an] example[] of facts supporting an immunity defense. But facts which do not reveal any such legitimately constraining duty-related emergency or exigency as the cause of state law violations do not suffice to establish a

federal defense, hence a basis for removal jurisdiction." *North Carolina v. Cisneros*, 947 F.2d 1135, 1139 (4th Cir. 1991) (internal citations omitted).

### III. LEGAL ANALYSIS

Defendant argues that his u-turn which led to the collision in this case was necessary and proper, in the reasonable performance of his duties and were related to an exigency to arrive at the location of the call for service. The Court agrees. Agent Sato-Smith was working at the Campo station on President's Day weekend with a skeleton crew and received a call for service of a group of individuals staging south of the border to illegally enter the United States in an area known for human and drug smuggling, all felony offenses. Further, after hearing that no one else was responding and knowing the remoteness of the area and how easily it is for individuals to get picked up by vehicles on the side of the road to take them further into the interior of the United States, decided to respond to the scene, which was 10-15 minutes away. Agent Sato-Smith was attempting to respond to felony offenses being committed and conducted a u-turn in his Border Patrol assigned van. Unfortunately, Mr. Woodall was killed as a result of the u-turn, but the Court must assess the reasonableness of the conduct, whether it was necessary and proper and whether the accident resulted from an exigency or emergency related to Agent Sato-Smith's duties. Agent Sato-Smith's duties were to respond to and assist in the apprehension of offenses committed against the United States in an area known for smuggling. It appears that his actions were indeed reasonable, necessary and proper and related to an exigency or emergency to investigate and potentially apprehend individuals that were actively committing felony offenses.

The Plaintiff argues that Agent Sato-Smith's failure to activate his emergency lights supports the inference that he was not responding to an emergency at the of the accident. Further, Plaintiff argues that Agent Sato-Smith act of slowing his passenger van down prior to making the u-turn does not suggest that he was in a rush to respond to the call and then compared the facts in this case to *Weber* and *Cisneros*. First, the failure to activate emergency lights does not support the inference that Agent Sato-Smith was not responding

to an emergency, especially in light of his uncontroverted testimony about the close proximity to the location of the call for service and darkness in the general area that would have provided any suspected human smugglers that a law enforcement vehicle was coming, giving them an opportunity to conceal themselves. Second, Plaintiff's argument about the act of slowing his passenger van down prior to making the u-turn does not support the inference they argue. Agent Sato-Smith's uncontroverted testimony was that if he did not slow down the van prior to making a u-turn, the van would rollover. Plaintiff never disputed that testimony. Finally, *Weber* and *Cisneros* are both distinguishable.

In *Weber*, a BP agent was on-duty and driving on the road in Minnesota near the Canadian border, when she struck a civilian who was attempting to remove a downed tree from the road, killing the civilian. *Minnesota v. Weber*, 589 F.Supp.2d 1170, 1171 (D. Minn. Dec. 17, 2008). Agent Weber claimed that the evidence in the state prosecution was insufficient, making her innocent of the offense and since she was on-duty at the time of the collision, she was entitled to protection by the Supremacy Clause immunity and that she would be prejudiced by unfair hostility toward the federal government if she was tried in state court. *Id*. at 1174. Weber conceded at the evidentiary hearing that there were no facts in the record sufficient to establish an "exigency or emergency." *Id*. The district court ruled that the case should be remanded to state court and did not grant Weber's petition for removal, because there were not facts in the record to justify protection by Supremacy Clause immunity. *Id*. at 1175.

In *Cisneros*, a marine was driving a convoy when he ran a red light and crashed into a civilian's vehicle, killing the civilian. *Cisneros*, 947 F.2d at 1137. The marine claimed that since he was driving as an on-duty marine he was protected by Supremacy Clause immunity. *Id*. at 1138. The Fourth Circuit held that the simple fact that he was on-duty and he believed he could navigate the intersection safely was not enough, to allow for the use of the Supremacy Clause immunity defense. *Id*. at 1139. The court gave examples of facts that would support a finding of exigency or emergency, including exceeding the speed limit in order to capture a fleeing felon, or to execute a raid. *Id*.

In the present case, there is sufficient facts in the record to support a finding of exigency or emergency as detailed above. Agent Sato-Smith was responding to a call for service of suspected felony offenses being committed. Neither Agent Weber, nor Corporal Cisneros were responding to any particular event, they were both simply on-duty when the collisions occurred. This case is unlike either *Weber* or *Cisneros* where the courts ruled that immunity could be denied. Responding to a call of suspects committing suspected felony offenses in the remote area of State Route 94 and the ability for those individuals to conceal and hide from law enforcement does support Agent Sato-Smith making a u-turn based on the exigency in detaining and arresting individuals suspected to be committing felony offenses.

## IV. CONCLUSION

Based on the foregoing, the Court finds that Defendant's actions were within the scope of authority, were necessary and proper, done with exigency or emergency and there is no dispute of fact. For the reasons set forth above, the Court hereby **GRANTS** Defendant's motion to dismiss the charges based on Supremacy Clause immunity and therefore **ACQUITS** Agent Sato-Smith of the charge of violating California Penal Code § 192(c)(2). No charges or other issues remain pending in this case. The Clerk of Court is directed to enter judgment in this case in favor of Defendant, and to close the docket.

**IT IS SO ORDERED**.

Dated: November 4, 2024

Honorable James E. Simmons Jr.
United States District Judge